## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

JUANITA RODRIGUEZ, on behalf of herself )
and all others similarly situated, )
                        )    Case No. 10 C 05876
      Plaintiff, )
                        )    Judge Edmond E. Chang
      v. )
                        )
CHASE HOME FINANCE, LLC, )
                        )
      Defendant. )

### MEMORANDUM OPINION AND ORDER

Plaintiff Juanita Rodriguez alleges, on behalf of herself and a putative class, that Defendant Chase Home Finance violated the Homeowners Protection Act (HPA),12 U.S.C. § 4901 *et seq.,* when it failed to disclose the amount and cancellation date of her private mortgage insurance upon offering her a loan modification (Count 1).[1] Rodriguez's complaint also alleges an individual claim under the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA), 815 ILCS 505/1 *et. seq.* (Count 2). Defendant has moved to dismiss [R. 19] both claims pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). For the following reasons, the Court grants the motion to dismiss the federal claim, and calls for the parties to file position papers on whether to exercise jurisdiction over the state law claim.

---

[1]This Court has federal question jurisdiction over the federal claim, 28 U.S.C. § 1331, and addresses *infra* whether there is diversity jurisdiction over the state law claim, or whether supplemental jurisdiction should be relinquished.

## I.

At this stage of the litigation, we accept Plaintiff's allegations as true and draw reasonable inferences in her favor. In August 2007, Juanita Rodriguez obtained a Chase-serviced home loan for $350,000; private mortgage insurance (PMI) was required. R. 1 (Compl.) ¶ 9. In August 2009, Chase approved Rodriguez for a loan modification. *Id.* ¶ 10. The modification included a Trial Period Plan Agreement (TPP), which provided that if Rodriguez made three monthly payments of $2,252.22, she would be offered a permanent modification. *Id.* ¶¶ 11-12. The TPP stated that the trial payments were an estimate of the payments Rodriguez would be expected to pay under the loan modification once the trial period ended, and the payments included "payment for Escrow items, including real estate taxes, insurance premiums and other fees". *Id.* ¶ 13.

Rodriguez made the three monthly trial payments and successfully completed the TPP. *Id.* ¶¶ 15-16. In January 2010, Rodriguez received a letter from Chase stating that she qualified for a permanent loan modification, and she also received a proposed Modification Agreement.[2] *Id.* ¶ 16. At the time that Chase sent Rodriguez the Modification Agreement, Chase did not disclose the amount of the PMI or when the PMI could be cancelled or terminated. *Id.* ¶ 18. Under the Agreement, Rodriguez's monthly payments were $315.31 more than the monthly trial payments she made pursuant to the TPP. *Id.* ¶ 17. When Rodriguez inquired about the amount increase,

---

[2]Rodriguez asserts that this Agreement is used for every permanent loan modification issued by Chase. Compl. ¶ 21.

Chase informed her that the permanent monthly payments were higher under the Modification Agreement in part because they included Rodriguez's PMI premium, which had not been included in the trial period payments. *Id.* ¶¶ 19-20.

## II.

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *McGowan v. Hulick*, 612 F.3d 636 (7th Cir. 2010) (courts accept factual allegations as true and draw all reasonable inferences in plaintiff's favor). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. —, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S.

at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. And the allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 129 S. Ct. at 1950.

### III.

### A.

Chase first argues that Rodriguez's HPA claim must be dismissed because the statute does not require servicers to provide new PMI disclosures upon modifying a loan. R. 20 (Def.'s Br.) at 2. In order to consider Chase's claim, the Court must first examine the plain language of the statute. *See Barma v. Holder*, 640 F.3d 749, 751 (7th Cir. 2011) ("In ascertaining the meaning of a statute, we begin with the plain language."). The statute provides that where PMI is required in connection with a "residential mortgage transaction," the servicer must provide the borrower with written notice of cancellation and termination dates.[3] 12 U.S.C. § 4903(a). A "residential mortgage transaction" arises when a mortgage or equivalent security interest "is created or retained against a single-family dwelling that is the principal residence of the mortgagor to finance the acquisition, initial construction, or refinancing of that dwelling." § 4901(15).

---

[3]"Cancellation date" refers to the date on which the principal balance of the loan is first scheduled to reach 80% of the original value of the property securing the loan. 12 U.S.C. § 4901(2). Once a borrower has reached her cancellation date, she may cancel the PMI. "Termination date" refers to the date on which the principal balance is first scheduled to reach 78% of the original value of the property. § 4901(18). Once the borrower has reached her termination date, the PMI will automatically terminate.

In response, Rodriguez argues that her loan modification qualifies as a "residential mortgage transaction," and therefore PMI disclosures were required. R. 24 (Pl.'s Resp.) at 5. It is clear that Rodriguez's loan modification did not finance the "acquisition" or "initial construction" of her home, but whether the modification could constitute a "refinancing" under the statute warrants consideration.

An examination of the only provision in the HPA which addresses a "modification" of a loan demonstrates that the HPA does *not* treat every transaction that could be called a modification as the equivalent of a "residential mortgage transaction" (or more precisely relevant here, a refinancing). The pertinent provision of the HPA states:

> (d) Treatment of loan modifications.

> If a mortgagor and mortgagee (or holder of the mortgage) agree to a modification of the terms or conditions of a loan *pursuant to a residential mortgage transaction*, the cancellation date, termination date, or final termination shall be recalculated to reflect the modified terms and conditions of such loan.

12 U.S.C. § 4902(d) (emphasis added). Rodriguez argues that this provision supports her view that *all* loan modifications are residential mortgage transactions because a modification requires recalculation of PMI-related dates, and the provision says that a modification is "pursuant to a residential mortgage transaction," the italicized text in the excerpt quoted above. But the clause "pursuant to a residential mortgage transaction" does not modify ('modify' in the grammatical sense of limit or explain) the term "modification." The clause applies only to the immediately preceding noun – "loan" – thus making clear that only modifications of a *loan* that was made "pursuant

to a residential mortgage transaction" is covered by the recalculation requirement. This reading follows the grammatical "rule of the last antecedent," *see Barnhart v. Thomas*, 540 U.S. 20, 26 (2003) ("a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows"), which although not an absolute rule, is sensibly applied here. In other words, the provision requires recalculation when "terms and conditions" of a loan made pursuant to a residential mortgage transaction are modified. In still other words, a modification alters the "terms and conditions" of a loan – the provision does not purport to categorize all modifications as residential mortgage transactions or refinancings. Indeed, if all modifications were refinancings, then § 4902(d) would not be needed at all, because all of the initial disclosures required for residential mortgage transactions would apply.

So modifications are distinct from refinancings. To draw the distinction between the two, the Court will borrow from the analogous distinction made in the Truth in Lending Act (TILA) and its accompanying regulations. The Truth in Lending Act has the same consumer-protection and disclosure purpose as the HPA, and similarly distinguishes between "the initial extension of credit," where certain disclosures are required, versus "subsequent arrangements," where they do not, *see Jackson v. Am. Loan Co.*, 202 F.3d 911, 912 (7th Cir. 2000). The Federal Reserve distinguished modifications from refinancings as follows: "Changes in the terms of an existing [loan] obligation, such as the deferral of individual installments, will not constitute a refinancing unless accomplished by the cancellation of that obligation and the

substitution of a new obligation." *Id.* at 912 (quoting Official Staff Commentary to 12 C.F.R. § 226.20(a)). In *Jackson*, the Seventh Circuit applied the distinction to hold that a modification in which the lender "agrees to defer repayment until another payday" was not a refinancing because there was no cancellation of the initial loan, nor a substitution of a new one. *Id.* at 913.

Here, Rodriguez's Modification Agreement states that it "will amend and supplement (1) the Mortgage on the Property and (2) the Note secured by the Mortgage. The Mortgage and Note together . . . are referred to as the 'Loan Documents.'" R. 20-1, Def.'s Exh. 4 at 1-2. Further, "all terms and provisions of the Loan Documents . . . remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents. . . ." *Id.* at 4-5. In short, because the Modification Agreement merely modifies the previous loan rather than cancelling the loan and creating a new obligation, Rodriguez's modification does not constitute a "refinancing" and therefore is not a "residential mortgage transaction" under the HPA.

In support of treating all loan modifications the same as refinancings, Rodriguez argues that Congress intended for PMI disclosure requirements to apply to loan modifications because it would make little sense for Congress to require the PMI to be recalculated after a loan modification under § 4902(d) without also requiring that the recalculation be disclosed to the borrower. Pl.'s Resp. at 7. But the statutory text, as discussed above, plainly distinguishes between modifications and residential mortgage transactions. And even if there were textual ambiguity to be illuminated by some other

authority, Rodriguez provides no evidence that Congress intended for PMI disclosures to be provided with each modification or alteration of an existing loan. On the other hand, Chase points to legislative history demonstrating that Congress was also aware of the countervailing concern that *too* many disclosures could confuse and be harmful to homeowners. *See* R. 25 (Def.'s Reply) at 7-8. For instance, Congress was concerned that requiring numerous disclosures "would make the disclosures so mundane that they would be rendered meaningless." *Id.* at 8 (quoting S. Rep. No. 105-129 at 3 (1997)). In light of that concern, it is far from clear that Congress intended to require additional PMI disclosures each and every time there was any modification to a term or condition of a covered mortgage.

To be sure, Rodriguez is correct when she asserts that "[t]he HPA is, at its core, a disclosure statute." Pl.'s Resp. at 7. The HPA seeks to protect homeowners from unnecessarily paying PMI by informing them when they are able to cancel the insurance and when the insurance must terminate on its own. But not every modification of a loan will accelerate the date when PMI is subject to cancellation. Indeed, in this case, Rodriguez does not allege that her loan modification would cause her PMI to terminate any sooner than if she did not modify her loan. In fact, under the modification terms, there is little reason to believe that Rodriguez will be able to cancel her PMI sooner, rather than later, so there is little danger of her paying PMI unnecessarily. Moreover, Chase is still required under the statute to make annual PMI disclosure statements, which would keep Rodriguez informed of her right to cancel PMI on a yearly basis. *See* § 4903(a)(3). There is even less reason to believe that

her PMI would be cancel-able before the next annual disclosure. The point is that, to the extent that Rodriguez's loan modification typifies other modifications and PMI cancellation is not accelerated, distinguishing modifications from refinancings will not undermine the HPA. Rodriguez has failed to state a claim under the HPA.

**B.**

Chase next argues that Rodriguez's ICFA claim must be dismissed because Rodriguez fails to allege deception, unfair conduct, or how she was actually damaged by Chase's failure to disclose PMI. Def.'s Br. at 7. As stated above, the federal claim alleged in Count 1 is dismissed. Thus, the Court must now consider whether or not to exercise supplemental jurisdiction over Rodriguez's Illinois law claim. 28 U.S.C.A. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction").

Before the Court denies Rodriguez's ICFA claim without prejudice and relinquishes it to Illinois state court, the Court will consider exercising supplemental jurisdiction. Accordingly, the parties are directed to submit position papers explaining why the Court should (or should not) exercise its discretion under § 1367 and maintain jurisdiction over this claim. Also, in paragraph 5 of the complaint, Rodriguez alleges that the Court has diversity jurisdiction under § 1332. R. 1 ¶ 5. But it is unclear whether the amount in controversy exceeds $75,000, particularly where Rodriguez did not in fact enter the permanent loan modification. Thus, Rodriguez's position paper brief should also address whether she can still allege the requisite amount in

controversy, such that her ICFA claim falls within this Court's diversity jurisdiction.

## IV.

For the reasons discussed above, Defendant's motion to dismiss [R. 19] is granted as to the HPA claim. Additionally, due to the dismissal of the class claim asserted in the HPA claim, Rodriguez's motion for class certification [R. 15] is denied as moot. The position papers of the parties to address the state law claim are due on or before October 3, 2011. The status hearing of September 27, 2011 is reset to October 6, 2011 at 8:30 a.m.


ENTERED:

*Edmond E. Chang*
_____
Honorable Edmond E. Chang
United States District Judge

DATE: September 23, 2011